No. 17,886.

ARTHUR M. FACKERELL *v.* DISTRICT COURT OF ADAMS
COUNTY AND MARTIN P. MILLER, JUDGE.

(295 P. [2d] 682)

Decided April 2, 1956.

Mr. BERNARD SOBOL, Mr. HARRY SOBOL, for petitioner.

Mr. ROY O. GILDIN, Mr. EUGENE H. TEPLEY, for respondents.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

On October 23, 1952, petitioner Arthur M. Fackerell obtained a decree of adoption for a minor child, Donna Elaine Arnold, in the county court of Moffat county. The minor had been in the custody of Fackerell and his wife for about one year prior thereto. July 9, 1955, Zella Grant, also known as Zella Ailene Arnold, the natural mother of the minor child, petitioned the district court of Adams county for a writ in the nature of habeas corpus by which she sought the custody of her child. The writ issued, and after motions to quash were denied, petitioner filed a return alleging lawful custody of the child by virtue of the adoption decree, which he claimed was not subject to review by the district court of Adams county. A reply to this return was filed by the mother in which she alleged that the county court of Moffat county had no jurisdiction in the adoption proceedings, because it had been misled into the signing of a decree of adoption by fraudulent acts of complainant, and alleged that it was for the best interests of the child that she be given the custody thereof.

Petitioner, on December 20, 1955, made oral motion to dismiss the action for the reason the district court had no jurisdiction over the subject matter, and in denying this motion the trial judge expressed some doubt as to the question of jurisdiction.

During the trial on December 21, 1955, and during the course of cross-examination of Fackerell concerning his residence at the time of procuring the decree of adoption, he requested a stay of further proceedings until he could sue out a writ of prohibition. The stay was granted, and upon proper application to this court, rule to show cause issued to respondents on January 26, 1956.

In support of the petition for the writ, counsel for petitioner contend that adoption proceedings are pro-

vided for by a special statute and jurdiction is conferred upon the juvenile court if there is such, otherwise, upon the county court and a review can only be had directly to the supreme court; the county court having continuing jurisdiction, it therefore is the proper place to reconsider its decree and no court of concurrent jurisdiction has any jurisdiction whatever in an attack upon the county court decree, and therefore the district court of Adams county had no jurisdiction to issue a writ in the nature of habeas corpus to review the final decree of adoption entered in the county court of Moffat county. Counsel for petitioner contend that since the county court obtained jurisdiction and that jurisdiction was exclusive, no other court of concurrent jurisdiction can interfere therewith.

We might say at the outset that on this particular point counsel has approached the question here on the wrong premise. The county court, whose decree is involved, does not have concurrent jurisdiction with the district court, which issued and entertained a partial hearing on the writ of habeas corpus except in civil actions where the amount involved does not exceed the sum of $2,000.

It is the contention of respondent court and the judge thereof that the record of the county court of Moffat county on its face discloses that the court never had jurisdiction over plaintiff, nor over her minor child, and that fraud on the part of petitioner Fackerell permeates the entire county court procedure. It is further rightfully contended that this procedure in the nature of habeas corpus is not an appeal from the county court, because plaintiff, as mother of the child, was not a party thereto; that there was no relinquishment of the child as required by the adoption statutes; and finally, that she had no notice of the adoption proceedings, and that neither petitioner for the adoption, nor the child, were residents of Moffat county.

The applicable statutes, C.R.S. '53, 4-1-1, 22-5-3, are as follows:

4-1-1. "The general assembly hereby declares its conviction that the policies and procedures for adoption contained in this chapter are necessary and desirable, having as their purpose the three-fold protection of:

"(1) The adoptive child, from unnecessary separation from his natural parents and from adoption by persons unfit to have such responsibility;

"(2) The natural parents from hurried and coerced decisions to give up the child; and * * *."

22-5-3. "* * * no person shall receive a child for the purpose of adoption, unless the child has been relinquished according to the provisions of this Article."

An examination of the record of the adopting court reveals that there is no relinquishment of the child as required by statutes C.R.S. '53, 22-5-3 and 22-5-4, which are as follows:

22-5-3. "Any parent desiring to relinquish his child shall not relinquish such child unless such relinquishment be in accordance with the provisions of this article and no person shall receive a child for the purpose of adoption, unless the child has been relinquished according to the provisions of this article. It shall not be necessary to comply with the provisions hereof if such relinquishment be to the stepparents, grandparent or grandparents, uncle or aunt of said child. Any juvenile or county court other than a county court in a county wherein a juvenile court is functioning shall have jurisdiction of all petitions for relinquishment. Any person who shall violate the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined a sum of money not exceeding five hundred dollars, or imprisonment for a period not exceeding six months, or both such fine and imprisonment."

22-5-4. Any parent desiring to relinquish his child shall petition a county or juvenile court within the state

of Colorado upon forms supplied by the court, giving the following information:

"(1) Name of both natural parents, if known.

"(2) Name of the child, if named.

"(3) Ages of all parties concerned.

"(4) Color, race and creed of the child.

"(5) Why relinquishment is desired.

"Upon receipt of the petition, the court shall set the same for hearing. If at such hearing the court believes that it is for the best interests of the parties concerned that no relinquishment be granted, the court shall enter an order dismissing the action.

"If the court is satisfied at such hearing that the guidance and counsel provided for in section 22-5-2 have been offered to the relinquishing parent and that relinquishment would best serve the interests of all parties concerned as well as the interests of the people of the state of Colorado, it shall enter an order of relinquishment.

"If the court is not satisfied that the relinquishing parents have been offered proper and sufficient counsel and guidance, it shall continue the matter not to exceed thirty days, and, at the time to which the matter has been continued, to either dismiss the petition or grant an order of relinquishment."

■ It is at once apparent that the statutory relinquishment cannot be waived because it is a part of the court process in such matters. It is necessary in order that the parent be under the jurisdiction of the court where the other statutory provision of counselling and guidance can be given. An attempt to relinquish a minor child to an individual is without any force or effect. Consent alone adds nothing in the way of giving jurisdiction to the court. None of these statutory requirements were met according to the record in this case. That being true, the county court could not enter a valid adoption decree, and the decree is thereby absolutely void on its face and may be the subject of a collateral

attack, and the lack of these jurisdictional matters made the decree subject to an attack at any stage of the proceedings or after entry of judgment. The lack of jurisdiction is usually shown by the judgment roll, and in adoption cases the record constitutes the judgment roll.

The "independent adoption summary" made to the county court by its investigator contains the following language:

"Although she did not relinquish it to the state or to a private agency she had previously made arrangements to pay for the baby's board and room in a private home."

The statutory procedure for adoption as provided in C.R.S. '53, 4-1-7 provides that where the child has not been placed in an adopting home by an agency and is not a grandchild or stepchild of one of the petitioners, the court shall fix a day for hearing of the petition which shall be not less than thirty days after the filing of petition, and the court shall order some child-placement agency to investigate. It further provides that the report of such investigation shall be made in writing and returned to the court at least one week prior to the day fixed by the court for the hearing. Here the county court order required the report to be returned on or before September 9, when it had fixed the hearing at 2:00 p.m. on September 10.

The question of the domicile of complainant as adopting party must have been a delicate one, because it was at that stage of the hearing when complainant was being cross-examined as to his domicile that the proceedings were halted until application could be made for this writ of prohibition.

The allegations of the mother's petition advised the district court of the fraudulent acts of petitioner in that it was made to appear to the county court that the mother had never seen her child; had decided to relinquish it; was not a resident of Colorado; and no reason was known why she wanted to give up the child. She further alleged that through fear of approaching death,

due to a cancerous condition, "a consent to adopt" was obtained from her on the representation that it would not be used until after her death, and she never knew that it had been used until after she had filed this habeas corpus action. It is only reasonable to assume that if these alleged facts are proven upon the hearing, which was here interrupted, they would have great weight toward voiding the adoption decree. The allegations of ·fraud were, in effect, admitted by the motion for summary judgment.

Contrary to the contention of counsel for petitioner upon the facts here presented, habeas corpus is a proper remedy, particularly so when the mother was not a party to the adoption proceedings and had no actual or constructive notice thereof. Further, in a matter of this kind an inquiry may extend beyond the usual issues involved in habeas corpus proceedings. If the inquiry is curtailed by strict legal principles the court is deprived of the opportunity to give full consideration to the matter of the best interests of the child, which is supreme. The question of abandonment is not here involved. The exact opposite prevails, because the mother in dire distress from sickness and disease, worked faithfully to pay for her child's keep. This court on a number of occasions has determined that habeas corpus is a proper procedure in cases of this kind. The technicalities that are applied in criminal cases have no application in these custodial questions. *Breene v. Breene,* 51 Colo. 342, 117 P. 1000; *Graham v. Francis,* 83 Colo. 346, 265 P. 690; *People v. Torrence,* 94 Colo. 47, 27 P. (2d) 1038.

The jurisdiction of the district court attached and since it is clear that the county court of Moffat county, which entered the adoption decree, had no jurisdiction at all, the hearing which was interrupted should be resumed and the best interests of the child determined.

For the reasons herein indicated the rule to show

cause is discharged and the cause remanded for further proceedings.