**In re the Petition of G.D., Petitioner–Appellant,**

**For the Adoption of D.L.H., Minor Child–Appellant, and concerning**

**E.L.H., Respondent–Appellee.**

**No. 87CA1036.**

Colorado Court of Appeals, Div. III.

May 18, 1989.

Inman, Erickson & Flynn, P.C., Richard P. Brentlinger Denver, for petitioner-appellant.

R. Antonio Lucero, Denver, for respondent-appellee.

Shari F. Shink, Denver, guardian ad Litem.

METZGER, Judge.

The trial court denied the petition of G.D. for a stepparent adoption of D.L.H. (the child), finding that the evidence was not clear and convincing to establish that E.L.H., the child's natural father (respondent), had abandoned him. G.D. and the child appeal that ruling, contending that the trial court misapplied § 19–4–107(1)(e)(II), C.R.S. (1986 Repl.Vol. 8B) to the facts. We reverse and remand for further proceedings.

The facts in this case are substantially undisputed. The child was born in June 1980, during the marriage of D.D., the mother, and respondent. That marriage was dissolved in January of 1983. The separation agreement, incorporated into the decree of dissolution, granted sole custody of the child to the mother and provided reasonable rights of visitation to respondent. The agreement further provided that, because respondent was currently unemployed, he would not be obligated to pay child support. However, the parties agreed to exchange financial affidavits yearly. It is undisputed that no financial affidavits were ever exchanged, no motion for support was ever filed, and no support obligation was ever agreed upon.

Respondent exercised his visitation rights sporadically for approximately 18 months following the dissolution. In July 1985, he voluntarily moved to California, where he obtained employment. He returned to Colorado for a visit in August of 1985, and visited the child before he returned to California later the same month. Between August 1985 and October 1985, he sent the child two letters and telephoned once, at 2:00 a.m. During this telephone call, the mother advised him that she was planning to marry G.D. Thereafter, respondent ceased any communication.

In October 1986, the mother contacted respondent and advised him that G.D. wished to adopt the child; respondent voiced no objection. G.D. filed a petition for stepparent adoption pursuant to § 19–4–107(1)(e)(II), C.R.S. (1986 Repl.Vol. 8B) in November 1986, and respondent was personally served with notice and a copy of the petition in December 1986, in California. He returned to Colorado soon thereafter, and visited with the child in January 1987, his first contact in 15 months and his first personal contact in a year and a half. Respondent also objected to the proposed step-parent adoption.

After a hearing, the trial court entered an order containing the following findings concerning the efficacy of the step-parent adoption:

"The evidence presented in this case was not voluminous. From what was presented, the following picture emerged. Father is a person less invested in his son as an individual, than as a status symbol or possession. His comments to the Court included one that 'my son is the only thing on earth who means something to me.' Unfortunately, that has a hollow ring when viewed in conjunction with his actions towards the child. He has had very limited recent contact with his son. Though there were some letters and calls, father did none of the things that one would expect from a parent who really cared about his child. There was no contact between father and child between fall, 1985 and January, 1987. His apparent interest is in maintaining his status as a parent, not in devoting any time in getting to know his son."

The trial court determined that the evidence was clear and convincing that the child's best interests would be served by granting the petition for stepparent adoption, and found that G.D. had developed a good relationship with the child. However, the trial court concluded that the evidence

was not clear and convincing that abandonment by the respondent had been established, holding that the evidence failed to show that "there was any intent to abandon the child." Accordingly, it dismissed the petition for stepparent adoption.

■ In any proceeding involving termination of a parent-child relationship, the appropriate standard of proof is clear and convincing evidence. *People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982).

■ A termination of parent-child relationship/stepparent adoption action is a single proceeding. Section 19–4–107(1)(e)(II). In such a proceeding, the court must consider whether termination and adoption would be in the best interests of the child. And, in making those determinations, it may consider, among other factors, family stability, the present and future effects of adoption, including the detrimental effects of termination, the child's emotional ties to and interaction with the contestants, the adjustment of the child to the living situation, the child's age, and the mental and physical health of the parties. *In re Petition of R.H.N.*, 710 P.2d 482 (Colo.1985).

The trial court found, by clear and convincing evidence, that the child's best interests would be served by granting the petition for stepparent adoption. The record amply supports these findings; thus, they are binding. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

However, the issue of abandonment is not so easily resolved. In our view, the court's conclusion that G.D. failed to establish abandonment of the child by respondent is inconsistent with its findings concerning the efficacy of adoption and indicates a misapplication of the pertinent law.

Section 19–4–107(1)(e)(II) provides that termination can be ordered if a respondent has abandoned the child for a period of one year or more. Respondent concedes that he had no personal contact with the child for a year and a half before G.D. filed the petition for stepparent adoption. He also concedes that he had no contact, by telephone, mail, or otherwise, with the child for 15 months before the petition was filed.

Thus, the issue to be determined is whether this lack of contact with the child constituted abandonment.

■ The Children's Code does not define abandonment, nor does it set forth substantive criteria upon which to base a finding of abandonment. Abandonment of a child by a parent presents primarily a question of intent. It is more often determined by what one does rather than by what one says. *Moreau v. Buchholz*, 124 Colo. 302, 236 P.2d 540 (1951). Thus, in assessing whether a parent has abandoned a child, the court must examine the totality of the circumstances, viewed in light of the best interests of the child. *See In re Petition of R.H.N.*, supra. This includes recognition both that every child is entitled to support and nurture and that, in order to preserve parental rights, a parent must give due attention to parental responsibilities. *See Stjernholm v. Mazaheri*, 180 Colo. 352, 506 P.2d 155 (1973); *In re Marriage of Young*, 682 P.2d 1233 (Colo.App. 1984).

■ The trial court here did not apply these principles in reaching its determination that abandonment had not been shown. Rather, it relied on *Mahoney v. Linder*, 14 Or.App. 656, 514 P.2d 901 (1973), which held that nonsupport and non-visitation alone are insufficient to establish abandonment. This was error since that case is factually distinguishable and analytically incongruent with Colorado law.

In *Mahoney v. Linder*, supra, the parents agreed that the father should "stay away and stop the support payments." No such agreement existed here. Furthermore, the court in *Mahoney v. Linder*, supra, adopted the rationale of *In re Adoption of Smith*, 229 Or. 277, 366 P.2d 875 (1961), which held that the best interests of the child are not relevant in a termination proceeding.

However, in *In re Petition of R.H.N.*, supra (fn. 3), our supreme court specifically rejected the rationale expressed in *In re Adoption of Smith*, supra. It held that the best interests of the child constitute a major factor for consideration in analyzing

the termination issue. Thus, the trial court's reliance on the reasoning in *Mahoney v. Linder, supra,* was error as a matter of law.

Moreover, the trial court's factual findings concerning abandonment are inconsistent with its findings concerning the efficacy of adoption. The court found that the child's best interests would be served by granting the stepparent adoption. It noted that respondent's apparent interest is in maintaining his status as a parent, not in devoting any time to fulfilling his parental responsibilities. G.D., on the other hand, "has true empathy for the child" and "is doing more for the child than respondent has done for the last few years, perhaps ever."

Notwithstanding these findings, in considering the termination issue, the court concluded that "a common sense approach indicates that nonsupport and non-visitation alone are insufficient to establish abandonment." It noted that "the facts do not support that there was any intent to abandon the child."

These findings are deficient. To the extent that they reflect an absence of consideration of the child's best interests, they are incomplete. To the extent they conflict with the findings concerning the efficacy of adoption, they are inconsistent. To the extent they require an articulated expression of intent to abandon, they are based on a misapplication of the law. *See In re Petition of R.H.N., supra.*

Accordingly, the judgment is reversed and the cause is remanded for entry of further findings on, and a determination of, the issue of abandonment, and entry of an appropriate judgment consistent with the views expressed in this opinion.

STERNBERG and HUME, JJ., concur.