In *People v. Armstrong,* 720 P.2d 165 (Colo.1986), the supreme court explained that an arrest must precede the person being "in custody" for purposes of § 18–3–203(1)(f). Hence, when a defendant is charged with resisting arrest and second degree assault, both statutes could be violated only if the defendant's conduct began before the arrest and resumed after it.

### III.

The PEOPLE of the State of Colorado,

In the Interest of A.D., a Child,

Upon the Petition of the El Paso County Department of Human Services, Petitioner–Appellee,

and Concerning W.B., III, Respondent– Appellant.

No. 01CA0881.

Colorado Court of Appeals, Div. IV.

Sept. 12, 2002.

Judith L. Hufford, Guardian Ad Litem.

Michael A. Lucas, County Attorney, Laura C. Rhyne, Assistant County Attorney, Colorado Springs, Colorado, for Petitioner–Appellee.

Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent–Appellant.

Opinion by Judge ROTHENBERG.

W.B., III (father) appeals from an order terminating the parent-child legal relationship between him and his child, A.D., pursuant to § 19–3–604(1)(a), C.R.S.2001. We affirm.

Father and mother were never married. At or near the time of the child's birth in October 1997, mother told father he was the child's biological parent, but the maternal grandmother told father he was not. Father did not pursue a relationship with the child.

On August 4, 1999, a petition in dependency or neglect was filed that named mother, her husband, and "unknown father" as respondents. Two weeks later, an amended petition was filed naming father as the child's biological parent.

After the amended petition was filed, father telephoned the county department of human services and spoke to the caseworker, stating that mother had told him he was the possible biological parent of the child. Father left a telephone message for the caseworker again in September 1999, stating he would call again the following day. However, the caseworker did not hear from him again until April 2000. During this time, the petition, summons, and other paperwork were sent to father at several addresses, including his mother's address.

Father appeared for the first time in the dependency or neglect proceeding on May 2, 2000. At that time, visitation was approved and was to be arranged between father and the maternal grandmother, with whom the child was placed. Father scheduled a tentative visit, but did not follow through.

In August 2000, a paternity test confirmed that father was the child's biological parent, and the child was adjudicated dependent or neglected. Thereafter, father did not make any further efforts to visit the child until shortly before the termination hearing. He did not pay child support and rarely contacted the caseworker for information about the child.

In October 2000, the county department of human services filed a motion to terminate the parent-child legal relationship on the basis of abandonment. At the March 2001 termination hearing, father did not seek custody of the child, but wanted his parental rights to remain intact so he could visit the child and perhaps assume custody of him at a later date. At the close of the evidence, the trial court granted the motion to terminate.

■ Father contends the trial court erred in finding he abandoned the child. He maintains that because he never had physical custody of the child, he could not surrender physical custody, nor could he resume physical custody as required by § 19–3–604(1)(a)(I), C.R.S.2001. We disagree.

Termination of the parent-child legal relationship on the basis of abandonment is permitted if the "parents have surrendered physical custody of the child for a period of six months or more and have not manifested during such period the firm intention to resume physical custody of the child or to make permanent legal arrangements for the care of the child." Section 19–3–604(1)(a)(I).

■ Abandonment of a child by his or her parents is primarily a question of intent and may be determined by the parents' actions as well as their words. *Moreau v. Buchholz*, 124 Colo. 302, 236 P.2d 540 (1951). In determining whether a child has been abandoned by his or her parents, the circumstances must be viewed in light of the child's best interests. *People in Interest of G.D.*, 775 P.2d 90 (Colo.App.1989).

■ The credibility of the witnesses and the sufficiency of the evidence, its probative effect and weight, and the inferences and conclusions to be drawn therefrom, are within the trial court's discretion. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

After hearing the evidence, the trial court here found that mother had advised father he was the child's biological parent during the early stages of the proceeding and that his paternity was established. However, because father never asserted his custodial rights, the trial court concluded he had surrendered physical custody and had failed to manifest a firm intention to resume physical custody or to make arrangements for the child's care. In reaching this conclusion, the trial court properly gave primary consideration to the child's condition and needs. *See* § 19–3–604(3)("In considering the termination of the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.").

The trial court's factual findings are supported by the record, and we perceive no error in its conclusion that father's failure to assert custodial rights constitutes a surrender of those rights. *See In re Robert O.*, 80 N.Y.2d 254, 264, 590 N.Y.S.2d 37, 604 N.E.2d 99, 103–04 (1992)("The demand for prompt action by the father at the child's birth is neither arbitrary nor punitive, but instead a logical and necessary outgrowth of the State's legitimate interest in the child's need for early permanence and stability."); *In re Baby Boy K.*, 546 N.W.2d 86, 100 (S.D.1996).

Accordingly, we conclude the trial court did not err in determining that father abandoned the child. *See Moreau v. Buchholz, supra; People in Interest of G.D., supra.*

■ In so holding, we reject father's assertion that by participating in the proceeding, he manifested a firm intent to resume physical custody of the child and attempted to make permanent arrangements for the child's care. Proceedings pursuant to § 19–3–604(1)(a)(I) are initiated by someone other than the parent, and participation in the involuntary proceeding does not in and of itself obviate termination on the basis of abandonment.

Father's desire to visit the child and perhaps someday assume custody is not a manifestation of a firm intention to resume custody. Nor can he be said to have made legal arrangements for the child's care simply by agreeing to placement with the maternal grandmother through the dependency or neglect proceeding. A parent who wishes to maintain the benefits of a parental relationship must bear the burden of parental responsibilities. *See Stjernholm v. Mazaheri,* 180 Colo. 352, 506 P.2d 155 (1973); *People in Interest of G.D., supra.*

Judgment affirmed.

Judge NEY and Judge VOGT, concur.